[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13735
Non-Argument Calendar
_____

D. C. Docket No. 4:10-cr-00039-RH-WCS-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LAWRENCE BERRY, JR.,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(November 13, 2012)


Before MARCUS, MARTIN, and EDMONDSON, Circuit Judges.


PER CURIAM:

Lawrence Berry, Jr. appeals his convictions and 180-month total

sentence following jury convictions for various drug and firearms offenses.  No reversible error has been shown; we affirm.

## I.

Berry first argues that the evidence presented at trial failed to support the jury's verdict on counts.[1]  He maintains that the government failed to offer proof of his involvement in the charged crimes aside from his presence at the Diehl Drive residence -- leased to his co-conspirator, Carlos Lofton --  where drugs, money, and a rifle were recovered.  We review challenges to the sufficiency of the evidence de novo.  United States v. Klopf, 423 F.3d 1228, 1236 (11th Cir. 2005).  We view the evidence in the light most favorable to the government and draw all reasonable inferences and credibility choices in favor of the jury's verdict.  Id.

We conclude that sufficient evidence supports the jury's verdicts.  On drug charges, the government established that on 3 May 2010, officers from the Tallahassee Police Department observed Berry and Lofton walking into the Diehl

---

[1] Following a jury trial, Berry was convicted of the following offenses: (1) conspiracy to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846; (2) possession with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B); (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (4) possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).

2

Drive residence together.  After Lofton left approximately an hour later, someone (not Lofton, possibly Berry) drove Berry's truck from the residence to a nearby parking lot and tossed a cocaine-tainted bag into a dumpster.

Later that same evening, officers executed a search warrant at the Diehl Drive residence.  Over 700 grams in cocaine, in excess of $15,000 in cash, adulterants, and other items used to manufacture crack cocaine were recovered at the residence.  When Berry observed officers uncover the cocaine and money, he emitted a loud sigh.  Based on the record, including this evidence, the jury reasonably could have concluded that Berry had agreed with Lofton to participate in the unlawful possession and distribution of cocaine.  See United States v. Arias-Izquierdo, 449 F.3d 1168, 1182 (11th Cir. 2006) (to secure a conspiracy conviction under section 846, the government must establish: (1) an agreement between the defendant and one or more persons, (2) the object of which is to do either an unlawful act or a lawful act by unlawful means).

Sufficient evidence also supports Berry's conviction for possession with intent to distribute cocaine.  To support a conviction under section 841(a)(1) for possession of drugs with intent to distribute, the government must prove: (1) knowledge of possession; (2) possession of a controlled substance; and (3) intent

to distribute.  United States v. Woodard, 531 F.3d 1352, 1360 (11th Cir. 2008) (citation omitted).

While Lofton leased the Diehl Drive residence, Berry had control and dominion over the premises because he had keys to the house (while Lofton did not) and Berry was staying in the residence and kept personal items, including clothes, there.  See id., (citation omitted) (a defendant constructively possesses drugs if he has "ownership or dominion and control over the drugs or over the premises on which the drugs are concealed").  Moreover, the amount of cocaine found at the Diehl Drive residence -- 730.2 grams -- was consistent with distribution, not personal use.  The jury could have reasonably inferred that Berry intended to distribute the cocaine.

We also see sufficient evidence to sustain Berry's convictions for firearms offenses.  Berry argues that the government failed to establish a nexus between the gun and the drug selling operation.  He further disputes that he knowingly possessed a firearm.  Possession of a firearm may be actual or constructive. United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004).  To establish constructive possession, the government must show that the defendant exercised ownership, dominion, or control over the firearm itself or the item in which it was concealed.  Id.  To establish possession of a firearm in furtherance of a drug

4

trafficking crime, in violation of section 924(c), the government must prove that there was "some nexus between the firearm and the drug selling operation." United States v. Brown, 587 F.3d 1082, 1091 (11th Cir. 2009) (citation omitted).

Evidence at trial demonstrated that the AK-47-style assault rifle found at the Diehl Drive residence was readily accessible: it partially was hidden by a pillow sham on a fireplace hearth approximately eight to ten feet from a couch on which Berry admitted he frequently slept and where he was sitting while officers searched the residence. The house also contained drugs, money, as well as other items used to manufacture crack cocaine; and officers recovered Berry's clothing in the house. The government presented evidence that drug traffickers often use firearms to protect drugs and drug proceeds from other drug traffickers and from law enforcement. That the residence was a stash house was further evidenced by a fortification bar to block the front door; it was reasonable for the jury to conclude that the rifle located within the residence was intended to protect the drugs and money found inside.

The proximity of Berry's personal items to the rifle and the drug paraphernalia was sufficient to persuade a rational trier of fact that Berry was guilty of possession of a firearm in furtherance of a drug trafficking crime and of being a felon in possession of a firearm. See United States v. Molina, 443 F.3d

5

824, 830 (11th Cir. 2006) (concluding that sufficient evidence existed to support firearms verdicts where the gun was accessible and was in close proximity to drugs, digital scales, and a large amount of money).

In sum, we conclude that the evidence was sufficient to convict Berry of the offenses at issue; hence, the district court committed no error in denying his motion for judgment of acquittal on all counts.

## II.

Berry next argues that the district court erred in excluding from evidence the post-arrest statements of his unavailable co-conspirator, Lofton. Berry asserts that Lofton's statements during the execution of the search warrant and during Lofton's own trial -- that the drugs and rifle found at the Diehl Drive residence belonged to him -- were exculpatory and should have been introduced into evidence pursuant to Fed.R.Evid. 804(b)(3). Berry says Lofton was unavailable; Lofton's statements were against his penal interest, and corroborating circumstances clearly indicated the trustworthiness of the statements.

We review a district court's evidentiary rulings for an abuse of discretion. United States v. Eckhardt, 466 F.3d 938, 946 (11th Cir. 2006). To be admissible

6

under Rule 804(b)(3), a hearsay statement must satisfy three elements: (1) the declarant must be unavailable; (2) the statement tends to subject the declarant to criminal liability such that a reasonable person in his position would not have made the statement unless he believed it to be true; and (3) the statement is corroborated by circumstances clearly indicating its trustworthiness. United States v. Westry, 524 F.3d 1198, 1214 (11th Cir. 2008) (citation omitted). "While a determination of whether a statement is against the declarant's penal interest is purely a question of law subject to de novo review, . . . consideration of a statement's trustworthiness requires a review of findings of fact and a review of the trial court's application of a legal standard to the facts. Id. at 1215.

Here, the district court did not abuse its discretion by excluding Lofton's post-arrest statements. Lofton was unavailable, due to his refusal to testify at Berry's trial; and Lofton's statements that the drugs belonged to him were against his penal interest. Corroborating circumstances, however, did not clearly indicate the statements' trustworthiness. See id. at 1214. At Lofton's own trial, he made inconsistent statements, denying a connection to the drug evidence retrieved at the Diehl Drive residence. He also recanted his post-arrest statements -- about his ownership of the cocaine found at the house -- in a follow-up interview at the police department. To the extent that the district court ruled that the statements

should be excluded under Fed.R.Evid. 403, the court did not abuse its discretion: allowing multiple, inconsistent statements by an unavailable witness could mislead the jury and confuse the issues. See Fed.R.Evid. 403 (the district court retains discretion to exclude otherwise relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence).

Even if the district court erred by excluding Lofton's statements, such an error was harmless. As noted above, the government presented sufficient evidence to support the jury's verdict on all counts. More important, any purported error did not have a substantial influence on the outcome of Berry's case because Lofton's statements did not necessarily exonerate Berry; they simply implicated Lofton. See United States v. Wright, 392 F.3d 1269, 1276 (11th Cir. 2004) (we will only reverse an evidentiary ruling when it has affected a defendant's substantial rights).

III.

Berry also asserts that the district court erred by enhancing his sentence, pursuant to 21 U.S.C. § 851, because his prior drug conviction was more than 25 years old. We review the district court's conclusions of law de novo and the findings of fact that support a sentence enhancement for clear error. United States v. Ladson, 643 F.3d 1335, 1341 (11th Cir.), cert. denied, 132 S.Ct. 534 (2011).

In this case, based on Berry's 1986 conviction for selling cannabis, the government sought a sentencing enhancement under section 851; Berry ultimately was sentenced to the ten-year statutory mandatory-minimum term of imprisonment on Counts 1 and 2.[2]

Although Berry committed the offense conduct forming the basis of his 1986 drug conviction when he was a minor, he was tried and convicted in adult court. While we have never explicitly stated that an adult conviction for conduct that occurred when the defendant was a juvenile may be counted for purposes of a sentencing enhancement under section 841, our prior precedent persuasively

---

[2] If a defendant is convicted of possession with intent to distribute 500 grams or more of cocaine "after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment." 21 U.S.C. § 841(b)(1)(B)(ii). Under section 851, the government must file an information before trial, stating the underlying conviction forming the basis of an enhanced sentence. Id. § 851(a).

9

supports that position.  See United States v. Acosta, 287 F.3d 1034, 1036-37 (11th Cir. 2002) (noting that a felony-drug-offense adjudication under a state youthful offender statute could be counted as a prior conviction for sentencing enhancement purposes under section 841).  Our precedent also forecloses Berry's argument that imposing the ten-year mandatory-minimum sentence violates his Eighth Amendment rights.  See United States v. Willis, 956 F.2d 248, 250-51 (11th Cir. 1992) (noting that a mandatory-minimum sentence of life imprisonment imposed for a conviction under section 841(b)(1)(A), as a result of having two prior drug convictions, did not implicate the Eighth Amendment's prohibition on cruel and unusual punishment).  Finally, nothing in sections 841(b) and 851 indicate that convictions, based on their remoteness in time from the instant offense or based on the age of the defendant when the offense conduct was committed, should be excluded from consideration.

Accordingly, the district court did not err by enhancing Berry's total sentence under section 851 based on his prior drug conviction.

AFFIRMED.